No. ——

First Circuit

## FISETTE v. THE MUTUAL LIFE INSURANCE COMPANY

(June 5, 1926, Opinion and Decree)
(June 26, 1926, Rehearing Refused)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Insurance—Par. 167, 176.**

Under Act 227 of 1916 the provision that no statements not endorsed upon or attached to the insurance policy when issued shall be .used in defense of a claim cannot have effect where the policy was in the possession of the insured at the time that an application for re-establishing it was made and the examination thereto had.

2. **Louisiana Digest—Insurance—Par. 80.**

Where one states in an application for insurance that he had not consulted a physician in the past five years, although he had been very sick and his physician had told him that unless he did something for himself he would die within a year, his statement to the insurance company is sufficient fraud to nullify the policy.

Appeal from the Parish of St. Landry, Hon. B. H. Pavy, Judge.

Action by Mrs. Marie S. Fisette against The Mutual Life Insurance Company. There was judgment for plaintiff and defendant appealed.

Judgment reversed.

R. L. Garland, of Opelousas, attorney for plaintiff, appellee.

Sandoz and Sandoz, of Opelousas, attorneys for defendant, appellant.

LECHE, J.   Pierre S. Fisette applied to the Mutual Life Insurance Company for insurance on his life on April 2, 1924. He was examined as to his physical condition by defendant's medical examiner on April 5, 1924, and on April 14, 1924, the policy of one thousand dollars, herein sued on, was issued to him. The local agent of defendant delivered the policy to the insured in person, within a few days. The delivery was made for inspection and the policy remained in the possession of Fisette until his death, March 13, 1925. In accordance with the provisions of Act 227 of 1915, p. 492, a photographic copy of the application and of the written medical examination, was annexed to the policy, which was retained by Fisette as stated.

One of the conditions of the policy was that it should not take effect unless and until the first premium should have been paid during the insured's continued good health, and the insured having failed to pay the first premium within sixty days, applied on the 28th day of July, 1924, for a re-establishment of the policy. This application for re-establishing the policy was, in accordance with the conditions of the policy requiring the insured to be in good health, accompanied by another medical examination, but was not attached to the policy. So that the insured was examined twice, viz: on April 5, 1924, the result of which examination was attached to the policy, and again on July 28, 1924, which latter application and examination were not attached to the policy, for the reason that the policy was then already in the hands

of the insured and out of the possession of the Insurance Company.

The difficulty that presents itself, and which seems to be the main question of law in the case, is whether under the cited Act of 1916, the application for re-establishing the policy and the medical examination of July 28, 1924, should be ignored as not being attached to the policy and not forming part of the contract between the parties.

The question as to whether the application for re-establishing the policy and the medical report annexed to such application, should be considered as part of the contract, becomes of paramount importance in this case, because the evidence is not clear as to the falsity of the insured's answers in his first examination on April 5, 1924, while in the second examination of July 28, 1924, annexed to his application for re-establishing the policy, the evidence seems to bear out the charge of fraud made by defendant.

The plaintiff who is beneficiary under the policy in this case, objected to the admission in evidence of the application for re-establishing the policy and to the testimony by defendant offered to prove the fraudulent action of the insured in the medical examination to which he submitted himself under that application, and although the grounds of objection are not stated in the note of evidence, the objection is presumably based upon the provisions of the Act of 1916. That Act which is a re-enactment of the Act of 1906, says in part:

"No statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statment or statements be endorsed upon or attached to the policy when issued."

Obviously the application for re-establishing the policy and the medical examination made under that application, could not be annexed to the policy when issued, for the plain reason that the policy was issued on April 14, 1924, and the application and examination for re-establishing the policy were only made on July 28, 1924. It was not annexed therafter for the equally evident reason, that the policy was in the possession of the insured and not in the possession of the Insurance Company. If the Legislature by the Act of 1916, intended that every subsequent, amendment or change in the contract should also be copied in the original policy or annexed thereto, the Act should contain some provision to that effect. But there is nothing in the language of the statute directly or by implication, requiring agreements made subsequent to the issuance of the policy to be incorporated in or attached thereto, and for this reason, the application for re-establishing the policy and the subsequent medical examination should be considered as part of the contract although not thereto actually attached or annexed.

This question is not discussed by the trial judge in his reasons for judgment but he actually so ruled, when he permitted the application and medical certificate to be filed in evidence and when he permitted the admission of testimony to establish the falsity of the insured's statements contained in that medical examination and considered the same in his reasons for judgment.

The trial judge was of the opinion however, that the insured had committed no fraud, that his answers were not knowingly false and he therefore rendered judgment in favor of plaintiff as prayed for.

The learned trial judge, in our opinion, erred in his conclusions of fact. The certificate of death of the insured, shows that he died of chronic dysentery on March 13, 1925. It appears that the deceased had consulted Dr. F. O. Pavy about the spring 1923, for soreness of the mouth. Dr. F. O. Pavy could not say whether this was the result of intestinal troubles because he did not make a careful examination of the patient at the time. His diagnosis was ulceration of the stomach and for this he treated the deceased. He suspected that the insured's trouble was of syphilitic origin but this was merely a suspicion, as he made no examination to trace the origin of the trouble. He was consulted several times by the deceased and after treatment, discharged him as cured. Dr. F. O. Pavy is not sure of dates but the deceased had consulted him several times and had been treated by him, just before removing from *Arnaudville to Opelousas, where deceased* lived when he applied for insurance in defendant company. Yet when deceased applied for insurance in April, 1924, he declared in his medical examination, that he had no illness, diseases, injuries and surgical operations since childhood and that *no physician or practitioner had prescribed* for or treated him, or had been consulted by him in the past five years for any ailment serious or not serious.

Plaintiff belittles the seriousness of the ailment for which the deceased was treated by Dr. F. O. Pavy and considers as unimportant, the answers of the deceased in the medical examination of April 5, 1924. Her counsel cite in support of her position, the cases of Cunningham vs. Penn. Mutual Life Ins. Co., 152 La. 1024, 95 South. 110; Goff vs. Mutual Life Ins. Co., 131 La. 99, 595 South. 28; and Cole vs. Mutual Life Ins. Co., 129 La. 705, 56 South. 645, where it was held that light and insignificant ailments not disclosed by an applicant for insurance, do not necessarily constitute fraud on the part of the applicant, and that concealment of immaterial facts do not vitiate the policy. But conceding that the ailment treated by Dr. F. O. Pavy was light and insignificant and that the statements of the insured in the examination of April 5, 1924, were immaterial, the rule adopted by the Supreme Court in the above cited cases cannot be applied to the examination of July 28, 1924. When that examination was made, insured was reasonably bound to know that his health had been impaired and his life had become in serious danger after the 5th of April, 1924, for it matters not how unconcerned and indifferent he might have been about his physical welfare, he had been told by Dr. Albert B. Pavy that unless he did something for himself he would die within the year. Dr. Albert Pavy was first consulted by the insured on May 3, 1924. Insured knew then that he was sick and Dr. Albert Pavy told him on that occasion, that he was very sick. At that same time insured told Dr. Albert Pavy that he had consulted other physicians. He called on Dr. Albert Pavy on two other occasions, which the doctor places at 8 or 10 days apart, so that his third consultation when he was told that unless he did something for himself, he would die within the year, could not have been later than June, 1924. The doctor could not state the date of this last consultation, but says in another part of his testimony that it was in the late spring or beginning of the summer of 1924.

We find no evidence to justify the theory that Dr. Albert Pavy made an error in his testimony, and that the final warning given by him to the insured, took place after July 28, 1924.

The testimony of Dr. F. O. Pavy and of other physicians who testified on the trial

of the case, indirectly, also support the conclusion which we have reached, that the insured concealed facts which were material in the confection of the contract and that the policy should for that reason, be avoided and plaintiff's demand rejected.

It is therefore ordered that the judgment appealed from be avoided and reversed at the cost of plaintiff and appellee, and that the premium paid by the insured and deposited by defendant in the registry of the lower court, be recognized as belonging to plaintiff.