## SHERIDAN v. THIBOUDAUX BENEV. 'ASS'N.*
### No. 975.

Court of Appeal of Louisiana, First Circuit.

May 3, 1932.

For former opinion, see 134 So. 360.

Voorhies & Labbe, of Lafayette, and Ott & Johnson, of Franklinton, for appellant.

Rich & Jones, of Bogalusa, for appellee.

LE BLANC, J.

The question about which we entertained further doubt, after the original decision of this case on appeal, 134 So. 360, was whether the provisions and waivers in Act No. 97 of

*Writ of certiorari denied by Supreme Court May 23, 1932.

1908 applied to an association of the character of this defendant.

The original opinion of this court holds that the Act of 1908 referred to, as well as Act No. 227 of 1916, do not govern mutual benevolent associations, which is what this defendant was held to be, and therefore the waivers therein referred to do not apply, and, as the insured had misrepresented the condition of his health at the time of his application for reinstatement, the defendant was relieved from liability and the beneficiary was denied recovery under the certificate which she held.

We are still of the opinion that the statements made by the insured at the time he applied for reinstatement were untrue. We are also of the same opinion that the provisions of Act No. 227 of 1916 do not govern in this case, as they are to be applied only against those insurance companies which are legal corporations. In other words, such companies as are duly incorporated under the laws of those states in which they have their domicile. The defendant here is not an incorporated association, and therefore does not come within the requirements and provisions of that act.

The task of reviewing the case on this rehearing is therefore limited to a consideration of two questions: (1) Is the defendant such an insurance company as is governed by the provisions of Act No. 97 of 1908; and, if it be held to be such, (2) do the waivers provided for under that act apply only to statements made in connection with the original application for insurance, or do they apply equally to statements made in connection with an application for reinstatement of a lapsed policy or certificate?

There is no doubt but that several important differences can be pointed out between associations like this defendant and regular life insurance companies, but, when fully analyzed, is not the fundamental purpose of each the same? Are not such associations in substance and effect companies or associations carrying on the business of life insurance? Instead of a policy, the beneficiary holds a certificate, both being to the same effect, which is that, within a certain time, after proof of death of the insured, the company will pay to such beneficiary a certain sum of money, provided the insured (who is called a member in the association) shall have paid all dues assessed against him. This assessment corresponds to the premiums paid by the insured in the regular insurance company, and, instead of having to be paid at stipulated periods, has to be paid upon due notice of the death of a member in the same circle to which he belongs. It is true, although the amount to be paid under the certificate is stipulated as being $1,000, that there is a qualifying provision following, which may limit it to a certain amount according to the collections that are made, but that qualification does not take away from the association its nature and character, which, strictly speaking, is a form of life insurance. Regular life insurance companies bind themselves to pay a certain amount specified in the policy which they issue, which amount is necessarily also based on the number of persons they keep insured and on a death rate that is calculated along the most scientific lines. If they did not maintain or increase the number of persons they insure, or, if, as Le Blanc, the president of the defendant association, says, they insured people, regardless of their health, they would not be able to survive and pay off their losses any more than his association could. Regardless of the altruistic motives which he says lie back of his association, it stands out in the final analysis as essentially a form of life insurance based on the plan of mutual life insurance. The lofty sentiments of friendship and family ties referred to by him and by which he says members are bound to each other to help themselves in the misfortune of death are overshadowed by a consideration of the fact that the association is state wide, or perhaps wider, and that in a single circle, such as the one to which the deceased in this case belonged, and which is circle No. 3, there are two thousand people, some living hundreds of miles apart, and a vast majority no doubt being total strangers to each other. Our conception of a truly mutual benefit society is better conveyed in paragraph 6, which deals with the subject in Ruling Case Law, volume 19, page 1183, than we can express it ourselves. In making a distinction between such societies and insurance companies, among other things, it is stated: "Nor are benevolent and beneficial associations influenced solely by the strict letter of their contractual obligations, but also by a spirit of fraternity. Thus, it not infrequently happens that the dues of a sick member are paid by the members of his subordinate lodge, or put out of its treasury, to keep him in good standing, in the face of impending death, for the very purpose of securing the payment of the benefit fund to his family. Such is not the conduct of mere strangers with each other, or of those who are bound only by the ties of insurance."

We cannot say that we read in the organization of the Thibodaux Benevolent Association any such kind of society, and neither do we see, in the conduct of its business, any such relation between those who compose it.

That there are differences between such associations as are referred to, and regular life insurance companies, is, as already intimated, patent. But the question at issue is, Are they such differences as exempt them from the provisions of states' laws respecting insurance? In some jurisdictions, it is held

that they are, but, as we view it, the weight of authority is otherwise. As appears from Ruling Case Law in the section following the one just quoted, in a number of jurisdictions, they are exempt by some express provisions of law from the regulations, or some of the regulations imposed on life insurance companies. "Under statutes of this nature," says that authority, "the decisions vary as to what is essential to bring an association within the exception, but they are practically unanimous in agreeing that where such associations have an insurance department and the provisions of a fraternal character are eliminated, their primary and only purpose is that of life insurance." That language seems peculiarly appropriate in considering this case, particularly in view of the fact that there is, in Louisiana, a special statute, Act No. 256 of 1912, which exempts fraternal insurance societies from the provisions of our special insurance laws. If it had been the intention of the Legislature to also exempt mutual benevolent associations, it would have been a very simple matter to include them along with fraternal societies in the act of 1912.

Quoting further from where we left off in Ruling Case Law, we see that: "Where the whole purpose of an association is to secure to each member thereof the payment, on his death, to his beneficiary or representative, of a certain sum of money, subject to the fulfillment of the conditions imposed by the charter and by-laws, and practically the only qualifications required for membership are that the applicant shall be in a certain condition of health and within a certain age, then such society is an insurance company and bound to comply with the laws governing such."

There, it seems, we have exactly what this defendant association is, and, being so, it is then a society which is essentially, in substance and form, an insurance company, and is bound by the laws of this state governing such. Among those laws, of course, is Act No. 97 of 1908, which provides, as shown in the original opinion, that the company which does not require a medical examination of an applicant for insurance shall be presumed to have "waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation," and that "knowledge of the agent of the company in writing the application, or of the collector of the company in collecting the premiums from the assured, shall be imputed as notice to the company, as to the health, habits or occupation of the assured."

Having now reached the conclusion that the defendant is subject to the provisions of the act of 1908, we next have to consider the second question presented, which is, Does the waiver therein specified apply to statements made in an application for reinstatement as well as to those made in connection with the original application?

In view of a recent decision of the Supreme Court on a similar question before it, the matter is now an easy one for us to decide, as we have no alternative but to follow the decision of the Supreme Court.

We refer to the case of Eddins v. National Life and Accident Insurance Co., 173 La. 644, 138 So. 430. That case involved the application of the provisions of Act No. 227 of 1916 to applications for reinstatement, and it was held that they applied the same as in the case of the original application. The act of 1916 is one of the same nature as that of 1908 under consideration here, and we believe the decision is controlling in this case. Indeed, counsel for defendant virtually concedes it to be, in the event we held that the act of 1908 governed at all.

The conclusions we have now reached force us to a different decision than was originally rendered by us in which the judgment of the lower court was reversed and the demands of the plaintiff rejected.

For the above and foregoing reasons, it is now ordered, adjudged, and decreed that the original judgment of this court be, and the same is now, set aside, avoided, and reversed, and it is further ordered, adjudged, and decreed that the judgment of the district court be reinstated and made the judgment of this court. The defendant to pay all costs.

ELLIOTT, J. (dissenting).

I think the Thibodaux Benevolent Association articles of agreement and their policy sued on are a kind of life insurance, and that, such being the case, the defendant is properly sued and cited as stated in the original opinion. I further believe that, if Act No. 97 of 1908 is applicable to the original policy, it applies with equal reason to the application for reinstatement; but I do not think the act in question applies to the agreement under which the Thibodaux Benevolent Association is operating and working. I think the act was intended to apply to life insurance companies which sell policies of insurance and receive payment in premiums, and where the policy issued is the direct obligation of the insurer to the insured or the parties claiming under him. But the defendant is not bound in that way, and does not operate in such a way, that its policies constitute an obligation such as is usually issued by regular life insurance companies.

I think the original opinion deals with the situation properly in the matter mentioned;

consequently the act in question should not, in my opinion, enable the plaintiff to recover under the circumstances of the present case.

I therefore respectfully dissent.