The suit is to recover on a policy for $1,000 issued by the defendant company on *Page 66 
the life of Jessie Thibeau, who died on October 16, 1939. The policy was issued on July 11, 1938, without a medical examination of the deceased insured. The claim is resisted on the ground that the insured gave false answers in her application for the insurance relative to her health and medical treatment.
After admitting the issuance of the policy and the death of the insured, the defendant set up as a defense that the contract of insurance was void and never took effect for the reason that the deceased stated in her application that she was in good health and had never been afflicted with cancer; that as a matter of fact, she had been operated on in the Charity Hospital in New Orleans on June 23, 1938, just two weeks before the application was signed, and her breast had been removed; that her death in October, 1939, resulted from a recurrence of this cancer. It is alleged that the failure of the insured to disclose the true condition of her health and the fact that she had just previously undergone an operation for cancer were wilful and fraudulent misrepresentations; that the premiums on the policy were paid by the husband of the plaintiff, the beneficiary under the policy, when they both knew, as well as the assured, that the policy was obtained through fraudulent misrepresentations.
The trial judge rendered a judgment in favor of plaintiff for the amount of the policy, interest and cost, and the defendant has appealed.
The application for the insurance was taken by the local agent of the company in Baton Rouge, W.A. Cotten, who has resided in that City for about forty five years and had been representing the defendant company for some eight years. He was well acquainted with T.H. Blackwell, the husband of the plaintiff and a brother-in-law of the deceased insured (the latter being a sister of the plaintiff). Blackwell had a policy in the company himself, and he had assisted the local agent in contacting prospects, the agent making periodic calls on Blackwell in order to collect the dues on his policy.
A month or so before the application was signed by Miss Thibeau, she was at the place of business of her brother-in-law, Blackwell, when the agent called to collect dues from Blackwell on his policy. The agent tried to get Miss Thibeau to take out a policy at that time, but she refused, stating that she was not able to pay the dues and that she had been sick. Blackwell at the same time tried to get two other men in his shop interested in taking out a policy in Cotten's company, but they could not be interested.
Miss Thibeau had been working at Keans' Laundry until February, 1938, at which time she quit work there, apparently on account of the illness which she later referred to when the agent tried to get her to take out a policy at Blackwell's shop. She went to the Charity Hospital where her right breast was removed on June 21, 1938, and, according to the hospital report, she was taken home by her relatives on July 6th, the report concluding "condition improved." She lived with her mother and a sister (not the plaintiff) on South Sixteenth Street in Baton Rouge, and on the day after she came back from the Charity Hospital the agent went to the place where she was staying and wrote the application for the insurance which she signed. There is some difference in the testimony as to whether Blackwell suggested to the agent that he go out and get Miss Thibeau's application, or whether the agent went to see her of his own accord; also whether or not plaintiff was present when the application was made out and signed (the preponderance of the evidence tending to show that she was not present).
The agent testified that at the time he took the application from Miss Thibeau her appearance did not indicate that she was sick or an invalid, even though she had just returned from the Hospital where the aboved mentioned operation was performed. All answers to the questions in the application were written by the agent, as he says, from answers given by the applicant from the questions asked her. On the question of whether the applicant now has or has had various diseases, including cancer, the answer is, "No". In answer to the question whether or not she had ever undergone a surgical operation, the answer is "operated on for female trouble in 1932". She answered that she was in good health and free from bodily disease; as to the question for what ailments she had consulted a physician in the last two years, the answer is, "None". In answer to the question, "Have you fully recovered from last illness?" the answer is, "Yes". And she answered that she had not consulted a physician in the last two years. *Page 67 
Obviously, the above answers were untrue. Whether or not they were willfully given with the intent to deceive and defraud depends very much on the importance that the applicant attached to them and her purpose in not giving all the facts, as well as her knowledge of the serious nature of her complaint and whether or not she actually believed that the operation she had undergone had corrected her trouble. Answers in an application for life insurance may be knowingly untrue and yet not fraudulent. Cunningham v. Penn Mutual Life Ins. Co., 152 La. 1023, 95 So. 110. In justice to the deceased as to her possible lack of knowledge of the serious nature of her complaint, it is shown that she was not told that she had a cancer, besides, at the time the application was signed, according to the testimony of the agent who took it, there was nothing about her appearance to indicate that she was suffering from any serious disease. While she died from the effect of the disease which was lurking in her body at the time the application was signed, yet she lived for more than a year thereafter.
However, if it is conceded that the defendant has proved that the insured willfully concealed her condition and the facts pertaining to her medical treatment with the purpose of deceiving and defrauding the company, this defense is not available to the insurer to defeat recovery under the policy if the provisions of Act 97 of 1908, as amended, are to be applied to this case as these provisions have been interpreted and applied by the courts under similar situations in other cases. The appropriate part of this act provides that where a life insurance policy is written without medical examination by a physician, it shall be presumed that the company writing the policy has waived its right to claim a forfeiture based on the ground that the assured did not make true answers in the application as to the health, habits or occupation of the applicant, whenever it appears that the agent of the company knew, or might have ascertained with reasonable diligence the true condition of the applicant's health, habits or occupation.
The defendant contends that the above act does not apply in this case for the reason that it is an insurance corporation organized on the assessment plan under Act 20, 2nd E.S. of 1935, Section 9 of which act, in providing for the kind of policies which may be issued by companies organized thereunder, requires such companies to pay the sum of money agreed to be paid upon the happening of the contingency specified therein, unless the contract shall have been avoided by fraud, or by a breach of its conditions. Act 97 of 1908, as amended, applies to all policies of life insurance issued in this state, unless the insurer writing such a policy is specially exempted from the provisions of the said act by some other statute. McBride v. Acme Industrial Life Ins. Society, 179 La. 701, 154 So. 741; Sheridan v. Thibodaux Benevolent Ass'n, 19 La.App. 762, 773, 134 So. 360; 141 So. 488. There are only two classes of insurers issuing policies or certificates of life insurance which are exempt from the provisions of Act 97 of 1908. These are industrial life insurance companies, which are permitted to set up fraud as a defense, if the insured is required to sign an application and the misrepresentations are wilful and conceal facts as to the ill-health of the assured at the time of the application. Act 160 of 1934 and Act 144 of 1936, as amended by Act 140 of 1938 (the former act apparently was passed because of the decision of the Supreme Court in the McBride case, supra, holding that industrial life policies were governed by the act of 1908. See Succession of Ryan v. Life Casualty Ins. Co., La.App., 198 So. 522). The other class of life policies exempted from the provisions of the 1908 act are fraternal beneficiary policies issued under Act 256 of 1912.
The statute under which the defendant insurance company was organized and is doing business authorizes it to avoid the payment of the policy on the happening of the contingency on the ground of fraud or breach of the conditions of the contract but makes no reference to the waiver provided for in the act of 1908, and indicates no intention to relieve the insurer operating under the assessment plan of the provisions of this general law affecting life insurance companies in general. There are other frauds and breaches of contract which will serve as a defense on a policy contract besides those relating to untrue statements of the insured in regard to his health, habits and occupation.
Having reached the conclusion that Act 97 of 1908, as amended, applies to this case, and in view of the fact that the agent had ample opportunity to ascertain the true condition of the applicant's health, the defendant company is now estopped from *Page 68 
setting up as a defense to avoid payment of the policy the alleged misrepresentations of the insured in her application. Her condition certainly could have and would have been ascertained from a medical examination by a physician. There are numerous physicians in Baton Rouge, and there was no reason for the defendant to issue the policy without a medical examination, unless it was willing to rely on the information obtained from the application alone and take chances on the condition of the applicant's health. The agent had been informed by the assured only a month or two before the application was signed that she had been sick and was unable to take out a policy. So far as the record shows, neither the agent nor the company made any effort whatever to find out anything about the health of the assured before issuing the policy other than what was contained in the application. If the conduct of the agent and the company could be termed reasonable diligence in ascertaining the condition of the applicant's health, the act of 1908 might as well be taken off the books, as an agent could write out an application and make no further effort to ascertain the condition of the applicant's health but rely solely on the statements in the application, and then, if those statements proved to be untrue and fraudulent, permit the insurer to avoid the policy for fraud.
The cases cited by counsel for the defendant involved industrial policies where, by the special statutes already referred to, the insurer is permitted to set up fraud as a defense where a signed application is required and the misrepresentations are shown to be willful. Those cases are not applicable here where it is conceded that the defendant is not an industrial company. The cases are too numerous to cite holding that where a policy is issued without a medical examination and the agent, by the use of reasonable diligence, could have ascertained the condition of the assured's health by a medical examination, the insurer is precluded from claiming the right to avoid the policy for false statements regarding the health of the insured in the application. An appropriate and rather similar case on this point to the present case is that of Eagan v. Metropolitan Life Insurance Co., 181 La. 16, 158 So. 575, which we think supports our conclusions in the present case.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby affirmed at the cost of the defendant in both courts.