PROVOSTY, J.
The son of plaintiff insured his life in her favor in the defendant company for $1,000 on September 2, 1903. He paid five yearly premiums, but failed to pay the sixth, falling due September 2, 1908; and, the 30 days of grace within which to make the payment having passed without his having availed himself of it, the policy lapsed on October 2, 1908. Four days thereafter he made application for reinstatement, and the policy was reinstated. He died four months thereafter, on February 4, 1909, of tubercular laryngitis. This suit is upon the policy.
There is no positive proof of the cause of his death; but the fact of its having been as here stated seems to have been taken for granted throughout the trial, and the inference in that regard is so strong as to amount to sufficient proof, and, moreover, plaintiff has laid no stress on the absence of this proof, though incidentally calling attention to it.
The application for reinstatement was made on the printed form of the defendant company, which contains the following:
“And the undersigned hereby ratifies and confirms all the statements made in the application upon which said policy was issued, and hereby makes the said application .and this request alike part of the said contract of insurance, and further guarantees that he is of temperate habits, and that, except as noted below, his health has been good and has remained unimpaired at all times since the last examination for'policy No. 1,384,385; that he has not consulted a physician since that time, and his family record has remained the same.”
The exception noted below is as follows:
“The only time had a physician was last fall while had measles and mumps.”
[1] Defendant, not being domiciled in the parish of Bienville, where the assured resided and died and where this suit was brought, but in the parish of Orleans, where it has a resident agent, pleaded to the jurisdiction of the court ratione person®, and pleaded, further, that the. fact of the court of Bienville parish not having jurisdiction of the suit was res judicata, it having been so decided on a previous occasion, when the same suit was brought in the same court, and a plea to the jurisdiction was interposed and sustained.
A complete answer to that contention is that, since the dismissal of the said previous suit, Act 44, p. 69, of 1910, has been passed,; which provides that:
“In all suits on a policy of insurance the defendant may be sued either at the domicile of the insurance company, or in the place where its principal agency is established, or in the parish where the loss occurred, or in the case of life insurance, at the domicile of the deceas *707 ed, or beneficiary whether it be in a case of fire, marine or life insurance.”
Said pleas were therefore properly overruled.
[2, 3] On the merits, the contention of the defendant is that the statements made by the assured in his application for reinstatement, to the effect that, “except as noted below, his health has been good and has remained unimpaired since the last examination for policy No. 1,384,3S5,” and that “he has not consulted a physician since that time,” were false, and have had the effect of avoiding the policy.
This raises a question of fact, for the determination of which an examination of the facts is necessary.
Both the district court and the Court of Appeals found against defendant upon the facts; or, in other words, found that the said statements of the assured were true.
Mrs. Cole, the plaintiff, testifies that her son was taken with the measles in November, 1907; that the attack lasted two or three weeks; that he was up and out of his room in December, and entirely well in January, except that the measles seemed to have settled on his throat; that there were “little kernels that never did entirely go away”; that no remedy was used for these kernels; that he seemed to be entirely well, and made no complaint; that he was well the whole year, and worked all the time, and did not consult a physician until the last of November, 1908, when he began to complain of his throat, and consulted Dr. McLemore, who advised him to see a specialist.
Mrs. Cole, widow of the assured, testified that her husband died February 4, 1909, a little over three months after her marriage; that until the latter part of November, 1908, he was in good health; that the first intimation she had of his throat being sore was in the latter part of November, when he complained of it.
J. D. Cole, an uncle of the assured, testified that he was a neighbor of his nephew, and saw him nearly every day, that all during the spring and summer of 1908 his nephew worked in the field and at hauling logs, and appeared to be as healthy as any man in the country, and made no complaint of not feeling well.
S. M. Emerson, the man in charge of the commissary of the sawmill for which the assured was hauling logs, testified that during the summer of 1908, after the assured got through with his crop, he saw him every day until “along up in the fall,” and that-he had the appearance of a healthy man; that logging is very heavy work, and takes a strong, healthy man.
Dr. McLemore testified that he attended the assured as his physician in the spring of 1908; that he was suffering from measles and mumps; that he recovered within 15 or 20 days, with the exception of some swelling of the glands of the throat; that, after the assured was up from his attack of measles and mumps, he treated him for a hacking cough, and for the swelling of the glands of the throat; that something like two months after he had got up he consulted him about the condition of his throat, and also as to his hacking cough; that he thinks he examined him three times during the summer of 1908; that in September he advised him to consult a specialist; that he is not positive about the date, as he is testifying only from memory, his books having been lost; that his reason for advising him in September to consult a specialist was that he did not improve under his treatment; that from the time he convalesced thoroughly from the measles until December, 1908, when his general health began to fail, his general health was good, and he considered him a good risk for insurance; that he was not hoarse, and his speech was unaffected; that he examined him at the time of the reinstatement of *709 the policy, and reported his general health and physical condition good; that the condition of his throat had in no way impaired his health so far as he, witness, could detect; that he simply had a sore throat which he, witness, diagnosed as a catarrhal condition of the throat.
In addition to this testimony of Dr. McLemore, there is in the record the following letter written by him to the agent of the defendant company on March 25, 1909, shortly after the death of the assured:
“Dear Sir: I hereby certify that I was the original medical adviser of W. Walter Cole, and I attended him in the spring of 1908 for measles, after which he developed this tuberculous condition of the throat which I prescribed for him at intervals during the summer, .and advised him to consult a specialist in September of the same year.
“Respectfully, A. O. McLemore, M. D.”
Referring to this letter, Dr. McLemore says in his testimony:
“This letter is correct, but misleading in this: During the time I was treating Cole, in the summer of 1908, I had not diagnosed his case as tuberculous; but was treating him for mere inflammation of the throat, which I learned afterwards, through the specialist, was tuberculous. This information was obtained through the specialist whom he consulted in December, 1908, or January, 1909, I am not sure. I had not thought of his condition being tuberculous until after his consultation with the specialist, which I think was in December, 1908, or January, 1909; and my reference in the letter to a tuberculous condition of the throat made March 25, 1909, was based on my opinion of his case at the time, after the report of the specialist, and not on my opinion of the case before the report of the specialist.”
Dr. McLemore was a witness for the defendant. Defendant also took by commission the testimony of Dr. Durham of Winn Parish, whom the assured had consulted on December 7, 1908, and of the specialist in throat troubles, Dr. Dowling, of Shreveport, whom the assured had consulted on December 81, 1908, but did not offer the depositions in evidence; and same were offered in evidence by the plaintiff.
■ Dr. Durham testified that he found “an inflamed condition of the mucous membrane of the throat,” and could not tell how long the throat of the assured had been affected except from assured’s own statement, which was that “the date of the attack was about a month prior,” but that, as an expert, he would say that “the inflammatory condition had not existed more than, one month;” that assured said that for 12 months prior to that time his throat became occasionally inflamed, and that these attacks were caused from an attack of measles; that no one had been treating him for this sore throat; that he had an occasional attack of sore throat, but paid no attention to it until the attack of December 7, 1908.
Dr. Dowling testifies as follows:
“There was an inflammation of the nose, nasopharynx, and larynx with some oedema of the epiglottis. There was a very small ulcer of the larynx just above the vocal cords on the right side near the anterior commissure.” That he could not estimate how long the throat had been affected, but would presume “he had suffered from some form of catarrhal trouble for some time.” That the condition which he found “sometimes develops very rapidly.” That he has no record of the statements of the patient, but recalls that he said he had been suffering with the sore throat for about two weeks, and that he insisted that he had been enjoying good health up to a few days before. That his conclusion was that the patient had tubercular laryngitis, and that a microscopical examination of the sputum confirmed this diagnosis.
Prom the foregoing evidence it is perfectly clear that the assured was sincere in saying that he was in good health. In fact, he was in good health, unless this occasional soreness of his throat was tuberculous; for the law of the life insurance, in accord in that respect with popular understanding, does not regard a mere passing ailment such as an occasional inflammation and soreness of *711 the throat as an impairment of the general health of a person. 25 Cyc. 812.
For showing that this soreness of the throat was tuberculous the burden of proof lay on defendant. 25 Cyc. 928, 929.
Defendant cannot be said to have discharged this burden, since the evidence leaves doubtful •whether this soreness of the throat was already tuberculous at the time of the reinstatement. But, here again, we find an inference so strong as to amount practically to proof; so that we prefer not to rest the case upon the failure of the defendant to have discharged this burden of proof, but upon the more certain ground that this statement as to condition of health was not a warranty, needing to be literally true, but a mere representation, needing to be true only to the best of the knowledge and belief of the declarant.
We think the view most consonant with reason and justice is that, if a policy contains anything which would tend to render doubtful whether the question as to present condition of health is intended to be answered with literal correctness or only to the best of the declarant’s knowledge and belief, the latter interpretation must be adopted under operation of the rule that policies are construed most favorably to the assured. Moulor v. Am. L. Ins. Co., 111 U. S. 385, 28 L. Ed. 447; 3 Cooley, Briefs on L. of Ins., p. 1955; 1 May on Ins. (4th Ed.) p. 156 (matter in brackets); Reppond v. Nat. L. Ins. Co., 100 Tex. 519, 101 S. W. 786, 11 L. R. A. (N. S.) 981, and note.
Now, while the original application for the policy in this case (made part of the policy) contains the usual general warranty clause, “I hereby agree that all the following statements and answers are by me warranted to be true,” it contains also the following question: “Are you now in good health so far as you know and believe?” a question which -shows conclusively that the applicant was not expected to answer with literal correctness as to the present condition of his health, but only to the best of his knowledge and belief; and the foregoing evidence, we repeat, leaves no doubt that the assured in this ease did so answer.
Having thus reached the conclusion that the said statement as to present good health was a mere representation and not a warranty, it becomes unnecessary to consider the other point argued in the briefs, as to whether Act 52, p. 86, of 1906, applies to the reinstatement of a lapsed policy, as contended by plaintiff, or exclusively to the original issuance and delivery of a policy, as contended by defendant. Said act reads as follows:
“That every policy of insurance issued or delivered within the state on or after the first day of January, nineteen hundred and seven, by any life insurance corporation doing business within the state shall contain the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, applications or other writings unless the same are indorsed upon or attached to the policy when issued; and all statements purporting to be made by the insured shall in the absence of a fraud be deemed representations and not warranties. Any waiver of the provisions of this section shall be void.”
[4] Passing to the consideration of the other statement made by the assured in his application for reinstatement, whereof the falsity is claimed by defendant to have avoided the policy, namely, that assured had not consulted a physician, we find as a matter of fact that, if the consultations testified to by Dr. McLeinore did take place at all during the summer of 1908, they were for a mere temporary soreness of the throat, which nobody looked upon as being serious; that they were not- “consultations” within the meaning of that word as used in the policy, and as understood in the law of life insurance. The law upon this point is stated in 17 Am. & Eng. Ann. Cas. 1203, as follows:
“In some jurisdictions it is held that a consultation with, or attendance by, a physician, within the meaning of a question as to such matters' as in an application for life insurance, *713 refers to a consultation or attendance for a ' serious or severe ailment, and not for a slight and temporary indisposition.”
Among the decisions cited in support of this are those of the home state of the defendant company — New York.
That the assured, when making his application for reinstatement, did not look upon these consultations (if, indeed, they had then already taken place) as having been such within the intendment of the policy, appears from his not having mentioned them in his statement. He would have been without motive for making a secret of them, for there can be no doubt that he did not consider this soreness of his throat as having been or being anything serious. When questioned by Dr. Durham, and later by the throat specialist, Dr. Dowling, in December, two months after the reinstatement, he was positive that his health had been perfectly good until a few days before the consultation with Dr. Durham. He certainly had every reason for answering truthfully to the physician whom he was consulting, and no motive whatever for concealment. The evidence leaves no doubt that he, his mother, and his wife, and even Dr. MeLemore, considered his sore throat nothing more than a common, temporary inflammation of the throat — a mere trivial, passing ailment, not impairing the general health.
Indeed, apparently, his wife did not even know of its existence. His everyday life and work were not in the least disturbed by it.
In expressing doubt as to these consultations having taken place, we do not mean to imply that they did not take place at all, but that they did not take place during the summer. We are satisfied that Dr. MeLemore treated the assured for sore throat at one time; but we think it was in the latter part of November and early part of December, some time after the reinstatement of the policy, and not, as Dr. MeLemore testifies, in the summer preceding the reinstatement. Dr. MeLemore was testifying from memory after the lapse of two years, without the aid of his books, which had been lost. His fixing these consultations in the summer conflicts with the positive testimony of the mother and the wife of the assured, who must have known of the condition of his health, and with the statements of the assured made without motive for concealment. The fact is it conflicts with Dr. McLemore’s own testimony wherein he. says that in these consultations he did not look upon the matter as serious and gave no advice. This is inconsistent with the statement, made later on in his testimony, that, when he saw the trouble would not yield to treatment, he advised the patient to consult a throat specialist. If the consultations were in the latter part of November and the early part of December, and the treatment and the advice to consult a specialist were in the course of them, all conflict in the evidence disappears. And we-must conclude that such was the ease. We-know for certain that Dr. MeLemore was-mistaken as to the date of the attack of measles and mumps, he fixing it in the spring of 1908, when all the other witnesses, together with the statements of the assured in the application for reinstatement, fixes it in the fall of 1907; and we think that he was, in like manner, mistaken as to the date of the consultations.
The application for review is dismissed, at the costs of the relator.