(95 South. 110)

No. 23761.

CUNNINGHAM v. PENN MUT. LIFE INS. CO. OF PHILADELPHIA, PA.

(Nov. 27, 1922. Rehearing Denied Jan. 27, 1923.)

*(Syllabus by Editorial Staff.)*

1. Insurance ⬯292—Untrue answers as to attendance of physician not necessarily fraudulent.

Answers to questions in life insurance application as to when applicant was last attended by a physician, and the disease for which he was attended, etc., may be knowingly untrue, and yet not fraudulent, as the applicant may, in good faith, have not considered the facts of sufficient importance to report, especially in view of the law that inconsequential illness does not have to be disclosed, though occasioning the attendance of a physician.

2. Insurance ⬯645(1)—Answer not alleging incorrect answers given with fraudulent purpose insufficient.

In action on insurance policy, fraud must be specially pleaded, and answer not averring that incorrect replies to questions in the application as to the attendance of a physician were given with a fraudulent purpose did not raise the question of fraud.

3. Pleading ⬯427—Failure to object to evidence does not broaden pleadings where evidence admissible on different theory.

Though, in action on life insurance policy, evidence was not objected to on the ground that fraud with respect to answers in the application had not been pleaded, this did not broaden the pleadings; the evidence being admissible on the question of materiality, treating the answers of the applicant as representations under Act No. 52 of 1906.

4. Insurance ⬯292—Presumed that failure to disclose attendance of physician was due to belief that it was unimportant.

Where blank application for insurance inquired with respect to many diseases, symptoms, etc., but made no inquiry concerning prostatitis or vesiculitis by those names or otherwise, since bad faith is never presumed, it must be presumed that the applicant, who was himself a physician and life insurance examiner, did not think them of sufficient importance to report in answer to an inquiry as to when and for what disease he was last attended by or consulted a physician.

5. Insurance ⬯292—Failure to disclose consultation of physician respecting diseases not specifically inquired about held not material to the risk.

Where applicant for insurance had consulted physicians who found prostatitis and vesiculitis, but considered his case chiefly psychic or imaginary, and the application, though inquiring with respect to many diseases and symptoms, made no specific inquiry concerning such diseases by those names or otherwise, the failure of the applicant to disclose the fact that he had consulted such physicians, and the result of the consultation, in answer to a question as to when he had last consulted a physician, *held* not material to the risk under Act No. 52 of 1906.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; Wm. Campbell, Judge.

Action by Grace Hunter Cunningham against the Penn Mutual Life Insurance Company of Philadelphia, Pa. From a judgment for plaintiff, defendant appeals. Affirmed.

Smith & Carmouche, of Crowley, and Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellant.

George P. Lessley, of La Fayette, Philip S. Pugh, of Crowley, and Mouton & DeBaillon, of La Fayette, for appellee.

By the WHOLE COURT.

DAWKINS, J. Plaintiff sues upon a policy of insurance covering the life of her deceased husband. The defenses pleaded are suicide, and that deceased answered falsely certain material questions propounded in his application for insurance concerning his habits, and his having consulted physicians about his health. No serious effort was made to sustain any of these except that of the false answers to questions about consultations with doctors, and there was judgment for plaintiff, from which defendant prosecutes this appeal.

Opinion.

The policy was issued in January, and the insured died in November, 1916. In the application for insurance, he was required to answer the following questions:

"Question 11. * * . * B. When were you last attended by a physician or consulted one? C. For what disease? D. Give details in full. E. Give name and residence of physician who attended you?"

His answers were:

"B. About ten years ago. C. Malaria. D. Sick two or three days—complete recovery. E. R. E. Webb, Rayne."

The answer does not specifically allege fraud, the averments with respect to these replies being as follows:

"Now, defendant avers, upon information received by it since the death of the said Cunningham, which it believes to be true, that the answers above quoted were false and incorrect, and must have been known to the said Cunningham to be such, the fact being, as defendant is now informed and believes, that the said Cunningham had, within one or two years prior to the date of his application and the answers above quoted, suffered from and been treated by a physician for nongonorrheal prostatitis. Defendant avers that nongonorrheal prostatitis is a serious physical condition, and, if defendant had been advised thereof, defendant would, upon further examination, not have accepted the said Cunningham as a proper subject for insurance by it.

"Defendant avers, moreover, that the false and incorrect statements made by the said Cunningham in his answer above quoted were material if not fraudulent, and in law and equity discharge this defendant from all liability upon the policy of insurance procured by and upon these false and incorrect statements."

[1, 2] It is entirely possible for answers to such questions to be knowingly untrue from a literal standpoint, and yet not fraudulent, for the applicant may, in good faith, have considered the facts not of sufficient importance to report, especially in view of the law, as announced by the decisions of this court and sustained by the jurisprudence of the

152 LA.—33

other states, to the point that inconsequential illnesses do not have to be disclosed, even though they may have occasioned the attendance of a physician. Goff et al. v. Mutual Life Ins. Co., 131 La. 98, 59 South. 28, Cole v. Mutual Life Ins. Co., 129 La. 704, 56 South. 645, Ann. Cas. 1913B, 748, and authorities cited in those cases. Nothing is charged to show that, if the information was material, deceased knew of it, or that his action was not due to honestly mistaken judgment. Fraud must be specially pleaded, and, for the reason just stated, that is, the answer does not aver the incorrect replies to have been given with a fraudulent purpose, we think the pleading falls short of the requirement of the law. 12 R. C. L. p. 416, verbo Fraud, § 164, and authorities in footnote; 3 La. Dig. p. 710 et seq. See, also, 3 Cooley's Briefs on Ins. p. 1956.

[3] While there was no objection to the evidence which was offered on the part of defendant, to the point that fraud had not been pleaded, this has not broadened the pleading, for the reason that it was all admissible upon the question of materiality, treating the answers of the applicant for insurance as representations. Tensas Delta Land Co. v. Ferguson, 128 La. 171, 54 South. 706; Rogers v. Southern Fiber Co., 119 La. 715, 44 South. 442, 121 Am. St. Rep. 537; Bonnette v. Wise, 111 La. 855, 35 South. 953; Wortham's Civil Procedure, vol. 1, p. 255.

We conclude, therefore, that, fraud not having been alleged, the situation is the same as if the defense rested upon the ground that the answers were representations, not warranties, and avoided the policy because material to the risk, and were untrue. Act No. 52 of 1906.

It is a fact, undisputed, that deceased did, on May 30, 1914, while in the city of New Orleans taking a special course in laboratory work (being himself a physician), visit a firm of specialists in genito-urinary diseas-

es, and, according to their office chart, supported by their oral testimony, the following conditions were recorded:

The patient "began October, 1913, feeling of pain and fullness in perineum. Then noted discharge from meatus after stool. Then slow loss of sexual power. Feels worse after intercourse. No urinary signs, save dribbling and lack of force to stream. No stomach crises. No general pains save for past two months, pains in joints of left thumb. Lack of force in ejaculation."

This constituted the history of his trouble, as reported by the patient, and, as the result of their examination, these physicians entered these notes:

"Nervous brunette. Reflexes active. Skin, mouth, glands neg. Left globe minor thickened. Test O. K. Long foreskin. No scars. meatus O. K. Slight grayish discharge. Not enough for slide. 1st mucoid haze; 2d O. K. No alb. or sugar. P. broad irreg. fairly hard. P. S. Free and milky (much pus poor stain). Advised Ex. Wass. (Bass) neg. W. T. Neg. Slight fixation."

Deceased visited them at intervals some three or more times thereafter until June 26, 1914, on which latter date, his course of studies having been completed, we take it, he left for his home, at which time the chart shows his condition:

"Feels fine except at times a sense of fullness in perineum. First and second glasses O. K. Right vesicle palpable, rather large, regular, soft, secretion rare and slight pus. Case seemed chiefly psychic. Says he is greatly relieved. This was his first rest in three years."

These specialists diagnosed his trouble as slight nongonorrheal prostatitis, or inflammation of the prostate gland, and vesiculitis, or inflammation of the seminal vesicle. He was given a Wasserman test for syphilis, which proved negative, and two or more examinations of his urine indicated that his kidneys were normal. The net result was that they considered his case "chiefly psychic" or imaginary, and, in the light of these facts,

at that time did not think that the complaint should "have affected his general health to any appreciable extent" and he was so led to understand by them.

In so far as the loss of his sexual powers is concerned, the temporary and psychic character of that complaint appears to have been proven by the fact that his youngest child (being the sixth) was born on July 13, 1915, after the examination above mentioned in May and June, 1914.

[4] The examination blanks of defendant inquired of the applicant with respect to many diseases, symptoms, etc., such as insanity, apoplexy, palsy, vertigo, convulsions, sunstroke, congestion, inflammation or any other disorder of the brain or nervous system, asthma, consumption, spitting of blood, habitual cough and expectoration, palpitation or any disease of the throat, heart, or lungs, appendicitis, indigestion, biliousness, cancer, or any tumor, pellagra, chronic diarrhea, ear discharge, dropsy, fistula, gallstones or gravel, renal or hepatic colic, open sores, inflammatory rheumatism, gout, syphilis or stricture, or any disease of the liver, kidneys or bladder, defect in hearing or eyesight, malformation or varicose veins, but nowhere did they directly or indirectly ask if he had had prostatitis or vesiculitis, by those technical names or otherwise. It is shown by overwhelming proof that prostatitis, or inflammation of the prostate gland, is a very common complaint among men above 40 years of age, and that it arises from a number of causes, such as exposure, gonorrhea, horseback riding, buggy riding, nervousness, etc., but the specialists pronounced it in this instance nongonorrheal. The deceased was shown to have been a country physician, with a practice scattered over considerable territory, which necessitated his doing a great deal of riding in buggy and on horseback, and that he had had very little rest for the three years preceding his

examination in May, 1914. The fact that he was also a physician, and also an examiner for life insurance, and knowing the common character of his trouble, could and doubtless did cause him to consider it not of sufficient importance to be reported in his examination; and, since bad faith is never presumed, we conclude that this was the consideration which actuated him in answering the interrogatories as he did.

[5] It is true that the head medical director of defendant company, whose testimony was taken by commission, when shown the depositions of the specialists in this city who had examined deceased in 1914, says that he would not have approved the application for insurance had he known the facts therein disclosed; but this was all after the fact, and the answers are in general terms upon a question which really this court is called upon to determine, that is, whether the facts disclosed were material to the risk, or, in other words, such as, if they had been known to the insurer, it would have declined the application. Penn Mutual L. Ins. Co. v. Bank, 72 Fed. 415, 19 C. C. A. 286, 38 L. R. A. 33, 70. It would seem to us that the best evidence upon whether or not it would have considered such a complaint sufficient to refuse the policy is that, notwithstanding the common nature of the trouble from which deceased was said to be suffering in men of the age of the applicant, and notwithstanding the detailed inquiries about numerous other diseases and symptoms, nowhere did it ask a question that was calculated to disclose such a condition. We take it that the interrogatories upon these blanks are deliberately prepared by experts with long experience in such matters, and, if such information was important, it would have been called for.

The other experts to whom this testimony was submitted for an opinion simply say that, if the information contained in the depositions of the venereal specialist had been before them, they would, in acting upon the application, have declined it until certain more thorough tests were made of the urine, etc., of the applicant. However, we do not think this sufficient to overcome the exceedingly strong presumption of its lack of importance which is raised by the failure to ask for the information in the circumstances above narrated. 3 Cooley's Briefs on Ins. pp. 2010, 2011, pars. (e) and (f), and authorities there cited.

For the reasons assigned, the judgment appealed from is affirmed, with costs.

O'NIELL, J., being absent from the state, takes no part in the decision of this case.