**RHODES v. METROPOLITAN LIFE INS. CO.**

No. 12420.

United States Court of Appeals
Fifth Circuit.

Feb. 1, 1949.

Rehearing Denied March 31, 1949.

Calvin E. Hardin, Jr., of Baton Rouge, La., for appellant.

C. V. Porter and Ben B. Taylor, both of Baton Rouge, La., for appellee.

Before HUTCHESON, WALLER and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellant, as beneficiary, brought this suit to recover the proceeds of a $20,000

policy of insurance issued by the appellee, defendant below, on the life of Jacob M. Dampf, appellant's former business partner now deceased. Dampf applied for the insurance on June 19, 1947; on September 11, 1947, less than three months later, he died of coronary thrombosis. The company refused payment, claiming that the answers to questions in the application for the insurance were false, that they were material to the risk, and that had the true facts been revealed the policy would not have been issued.

In the court below, at the close of the evidence, the judge, on motion, directed a verdict for the defendant. From the judgment entered thereon, plaintiff prosecuted this appeal. In this court, he relies on eleven specifications of error, but in our view of the case only two are important to our decision. They give rise to two questions:

(1) Did the trial court err in ordering the personal physician of the insured to testify over objection that his testimony would derive from privileged communications?

(2) Did the trial court err in directing a verdict for the defendant at the close of the trial?

At the trial, when the defendant placed on the witness stand Dampf's physician, Dr. E. K. Hirsch, plaintiff objected on the ground that a privileged status had existed between the physician and the deceased patient which precluded testimony by Dr. Hirsch as to the deceased's physical condition. The court overruled this objection and ordered the witness to testify.

The only statute in Louisiana providing that communications by patients to their physicians are privileged is article 476 of the Louisiana Code of Criminal Law and Procedure.[1] It states: "No physician is permitted, whether during or after the termination of his employment as such, un-less with his patient's express consent, to disclose any communication made to him as such physician by or on behalf of his patient, or the result of any investigation made into the patient's physical or mental condition, or any opinion based upon such investigation, or any information that he may have gotten by reason of his being such physician; provided, that the provisions of this article shall not apply to any physician, who, under the appointment of the court, and not by a selection of the patient, has made investigation into the patient's physical or mental condition; provided, further, that any physician may be cross-examined upon the correctness of any certificate issued by him."

Under article 478 of the Louisiana Code of Criminal Law and Procedure, the privilege of excluding a physician's testimony is a purely personal right: it can be set up only by a person in whose favor the right exists. A privilege such as this is statutory and did not exist under the common law. Wigmore on Evidence, § 2380 et seq. Statutes changing common-law rules are generally subject to strict interpretation and may not be extended beyond the express purpose and scope of the statute. The only privilege embodied in the Civil Code of Louisiana, applicable to civil actions, has to do with communications from a client to his attorney. Article 2283. No privilege appears in that Code with respect to communications to physicians. It is not the function of courts, nor, indeed, is it in any way within the province of the judiciary, where local law is administered under two codes, a criminal and a civil, to transpose the provisions of the one to the other or to interchange the statutory principles they enunciate in the absence of express authority. We are inclined, therefore, to the view that the privilege in question is restricted to criminal proceedings. However, should it transpire that we are mistaken in this view, it is

[1] Article 475 of the same Code provides that communications between client and attorney are privileged, and article 477 provides that communications to clergymen are privileged. Then follows article 478 which provides: "The right to exclude the testimony, as provided in the three articles last preceding, is purely personal, and can be set up only by the person in whose favor the right exists." The Louisiana Code of Criminal Law and Procedure sets out the criminal law and the rules of criminal procedure, including certain rules of evidence in criminal cases.

clearly beyond doubt that the privilege may not be exercised by the plaintiff in this case. He failed to establish himself in the stead of the person in whose favor the right existed, if it be found to be applicable to a civil action. We, therefore, conclude that the trial court did not err in overruling the objection and ordering the physician to testify.

There remains the question of whether the trial court erred in directing the verdict for the defendant. It is elementary that the direction of a verdict in a case such as this is an exercise of the trial judge's discretion after weighing all the evidence and testing its quality, substance, and credibility. In the face of the evidence here, it would be straining at a gnat and swallowing a camel to admit a vestige of doubt in the conclusion that it would have been error to leave the matter to the jury. Dampf's answers, in the application for the policy, to questions relating to his health, revealed that he represented that he had no disease of the kidneys, that he had never been told that he had sugar in his urine, that he had never had diabetes, and that he had not consulted with or been treated by any physician within the previous five years.[2] It is uncontradicted that the insured was told by his physician that he had sugar in his urine and that he had diabetes; that he was treated therefor over a period of weeks within a very short time before making his application for insurance. The evidence, therefore, leaves no room for doubt that he not only made false answers but that he knew the answers to be false.[3] Since this testimony was uncontradicted, the question before us is whether Dampf's false answers, in the light of the provisions of the policy and the law of Louisiana, will, as a matter of law, avoid the policy.

The policy provides: "This Policy and the application therefor, a copy of which

---

[2] The application contains the following questions and answers:

"8. Have you ever been told that you had albumin or sugar in your urine? If yes, state when, for how long and describe treatment received. A. No.

"11. Have you ever had any ailment or disease of

\*      \*      \*      \*      \*      \*

"(c) The stomach or intestines, liver, kidneys or genito-urinary organs? A. No.

"12(c) Have you ever had Diabetes, Pleurisy or Pneumonia? A. No.

"12(g) Have you consulted a physician for any ailment or disease not included in your above answers? A. No.

13. What clinics, hospitals, physicians, healers or other practitioners, if any, not named above, have you consulted or been treated by, within the past five years? If none, so state. A. None."

At the end of the questionnaire, he affixed his signature, certifying that he had read the answers, and that they were full, true, complete, and correctly written.

[3] Dr. Hirsch testified that he first saw the insured on July 9, 1945, and that he then complained of frequency and burning on urination. Hirsch next saw him on February 28, 1947; he then complained of boils. An examination revealed sugar in his urine. The doctor sent Dampf to the hospital for a blood examination. The tests showed sugar to such an extent that continued examination and observation were deemed necessary to determine whether the condition was diabetic. At that time Dr. Hirsch told him the results of the examination and gave him instructions:

"Q. Did you tell him he had sugar in his urine? A. Yes, sir; told him why we should examine the twenty-four hour specimen."

Hirsch further stated, "From then on, we gave him a certain definite diet; gave him a little apparatus with which our patients test their own urine." Dampf, he said, sent specimens to him on March 1, 2, 3, and 4. On March 5, he saw Dampf again and at that time made a diagnosis of diabetes.

"Q. Did you so inform Mr. Dampf? A. I did.

\*      \*      \*      \*      \*      \*

"Q. \* \* \* you told him, definitely, he had diabetes? A. That's right. We outlined a diet for him, and asked him to keep an absolute record of every mouthful he ate, and his sugar tests he made at home, and to bring them back into the office.

"Q. Did he make such tests, and keep such records? A. He did.

"Q. Do you have them there? A. I have them.

\*      \*      \*      \*      \*      \*

"Q. Did you, or not, ever tell Mr. Dampf \* \* \* that he had diabetes and that he'd never get over it? A. Yes, I told him he had diabetes and would never get well from it."

is attached hereto as a part hereof, constitutes the entire contract between the parties, and all statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this Policy or be used in defense of a claim hereunder unless it is contained in the application therefor and a copy of such application is attached to this Policy when issued."

Act No. 227 of 1916 provides that every policy of insurance issued by any life insurance corporation doing business in the State shall contain the entire contract between the parties and that nothing shall be incorporated therein by reference to any constitution, by-laws, rules, applications, or other writings, unless the same are endorsed upon or attached to the policy when it is issued; and that all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties. Interpreting this act, the Supreme Court of Louisiana has held: (1) that questions in an application as to diseases or consultations, addressed to an applicant for life insurance, are to be understood to refer to substantial or appreciable disorders, not to indispositions of a temporary character. Carroll v. Mutual Life Ins. Co., 168 La. 953, 123 So. 638; Cunningham v. Penn. Mutual Life Ins. Co., 152 La. 1023, 95 So. 110; Goff v. Mutual Life Ins. Co., 131 La. 98, 59 So. 28; Cole v. Mutual Life Ins. Co., 129 La. 704, 56 So. 645, Ann.Cas.1913B, 748; (2) that the defendant has the burden of proving fraud: Valesi v. Mutual Life Ins. Co., 151 La. 405, 91 So. 818; Mutual Life Ins. Co. v. Rachal, 184 La. 430, 166 So. 129; (3) that it is only when he sustains this burden that the statements become warranties, the falseness of which will avoid the policy, regardless of their materiality: Goff v. Mutual Life Ins. Co., supra; and (4) that in the absence of fraud, all statements are representations, and, in order to avoid the policy, the misrepresentations must be material to the risk. Goff v. Mutual Life Ins. Co., supra; Cunningham v. Penn. Mutual Life Ins. Co., supra; Valesi v. Mutual Life Ins. Co., supra; Mutual Life Ins. Co. v. Rachal, supra; and Carroll v. Mutual Life Ins. Co., supra. Whether false answers

knowingly made are fraudulent, as a matter of law, we need not now decide. It is sufficient, if admitting the good faith of the insured, the evidence establishes misrepresentation of a material fact of such import that had the truth been revealed the policy would not have been issued. Assuming that the insured was not guilty of fraud but was acting in good faith, the decisive question is whether the representations were material to the risk. We think, as a matter of law, they were. It cannot reasonably be supposed that the insurance company would have issued the policy if it had been informed of Dr. Hirsch's examinations, the tests he made, his diagnosis, and the treatment he prescribed and Dampf followed. Where all the testimony relating to a question of fact excludes every reasonable inference but one, the issue becomes one of law for determination by the Court. Lee v. All States Life Ins. Co., 49 Ga.App. 718, 176 S.E. 811, 813. The insured was shown to be a man of affairs, with fairly large business interests, and must have known that the purpose behind questions concerning his health and habits was to enable the defendant to determine whether it would issue the policy. The statement of the court in First Trust Co. of St. Paul v. Kansas City Life Ins. Co., 8 Cir., 79 F.2d 48, at page 54, is apposite: " * * * He could not have regarded a diabetic ailment as so trivial that an insurer would not want to know about it. The only possible rational explanation of his conduct is that he willfully made the false statements for the purposes of concealing the facts and of deceiving the insurer so that he might procure a policy which, if this truth were known, might be refused. In this situation of fact the only question is one of law and that is easy of solution. The law is that where the insured, in his application, intentionally makes a false statment about a material matter, the policy may be avoided. * * *" See also Lee v. New York Life Ins. Co., 144 La. 445, 80 So. 652, and Jefferson Standard Life Ins. Co. v. Stevenson, 5 Cir., 70 F.2d 72.

The argument that the misrepresentation was immaterial because the insured died from coronary thrombosis and not from diabetes, we think begs the ques-

tion. The real issue has to do with the circumstances under which the defendant assumed the risk, whether it would have assumed the risk it did assume had the truth with respect to Dampf's health been made known to it. The cause of insured's death is not important, because the insurer would have had the right to cancel the policy if insured were still living.

The trial court did not err in instructing the verdict.

The judgment appealed from is

Affirmed.

HUTCHESON, Circuit Judge (concurring).

In a series of decisions from Florida, this court had occasion to examine the state of the law upon the effect of false answers to questions as to what clinics, hospitals, physicians, healers, or other practitioners applicant had consulted.

In Metropolitan Life Ins. Co. v. Madden, 5 Cir., 117 F.2d 446, on full citation of authorities, we held that an untrue answer to a question of this kind seeking to elicit a fact as to matter material to the risk prevented recovery on the policy, and this without regard to whether the answer was given with a conscious fraudulent intent to deceive. So holding, we reversed the judgment for retrial in accordance with this view.

In Madden v. Metropolitan Life Ins. Co., 5 Cir., 138 F.2d 708, 151 A.L.R. 984, a later appeal from an instructed verdict for the defendant, we held, on the authority of Metropolitan Life Ins. Co. v. Poole, 147 Fla. 686, 3 So.2d 386, a case decided since our former opinion, that the law of Florida was different from that we had formerly declared. Stating that Florida in the Poole case had now taken its place with those courts holding: that where a statute or policy provides that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, a representation, though false, does not avoid the policy unless it was made with conscious intent to defraud; and that whether it was so made is normally for the jury, we held ourselves bound to follow it.

Among the cases cited in support was a case from Louisiana, Cunningham v. Penn. Mutual Life, 152 La. 1023, 95 So. 110. I have re-read that case and other Louisiana decisions on the point in the light of the outstanding feature of Louisiana jurisprudence, the complete absence of clear distinction between fact and law [1] there, and Louisiana appellate courts are free to decide issues of fact for themselves.

So re-reading it, while I can find in it clear warrant for the view that the Supreme Court of Louisiana did, on issues similar to those tendered by plaintiff here, hold that the defense of fraud was not made out, and permit recovery on the policy, I can find none for the view that such holding was a ruling upon matter of law which would bind this court,[2] as distinguished from a holding on matter of fact which would not. This being so, and being also of the opinion that "there was no fact issue for the jury, for reasonable minds having no interest except to find the truth could not have found that the answers admittedly material were not also false",[3] on the authority of Lee v. New York Life Ins. Co., 144 La. 445, 80 So

---

[1] "The civilian, with his code and his trial by judge, looks on these terms, matter of fact and matter of law, as little better than senseless jargon. We, brought up in its spirit and nature, know that matter of fact and matter of law are the very stuff of which the common law is made. Especially do insurance lawyers know that law and fact, judge and jury, are the words to conjure with when, embattled in a trial, the issues joined, the outcome in suspense, plaintiffs and defendants marshal their forces to press for decision."

"Said Lord Coke: 'The most usual trial of matters of fact is by twelve such men; for ad questionem facti non respondent jurices; and matters in law the judges ought to decide and discuss; for ad questionem juris non respondent juratores.'" Hutcheson, Law and Fact in Insurance Cases, Texas Law Review, Dec., 1944, Vol. XXIII, No. 1, p. 1.

[2] Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; Arab Corporation & Duneco v. Bruce, 5 Cir., 129 F.2d 94; Id., 5 Cir., 142 F.2d 604.

[3] Sun Life Assurance Co. of Canada v. Maloney, 5 Cir., 132 F.2d 388, 390.

652, Jefferson Standard Life Ins. Co. v. Stevenson, 5 Cir., 70 F.2d 72, and Madden v. Metropolitan Life Ins. Co., 5 Cir., 117 F.2d 446, I concur in the opinion of the majority.