HALL, Judge.
Plaintiff, beneficiary under an insurance policy issued by defendant on the life of her son, William Oatis Lane, filed suit to recover the avails of the policy ($1,000.00). The defendant insurer specially defended on the ground that certain untrue statements, material to the risk, were knowingly made by the insured in his policy application which rendered the contract null, void and unenforceable, and that had the true and complete facts been disclosed in the application defendant would not have issued the policy. Defendant deposited in the Registry of the Court for the benefit of plaintiff the amount of all premiums received by it. Trial of the case on the merits resulted in a judgment in defendant’s favor, dismissing plaintiff’s suit. Plaintiff appealed.
The record reveals the following facts: The insured, William O. Lane, who had been an agent for another life insurance company for many years, applied on April 7, 1960 to defendant company for $1,000.00 of life insurance. The policy was issued after a medical examination in connection with which he was required to answer certain questions. The examining physician recorded his answers on the application and the same was duly signed by Lane.
Among the questions asked and Lane’s answers thereto as they appear on his application over his signature are the following:
“1. What physician did you last consult?”
Answer: “Charity Hosp. N.O. La.
(year) ’43, (illness) stomach ulcer.”
“2. What physicians have you consulted during past five years?”
Answer: “No.”
“3. In what clinics, dispensaries, hospitals or sanitoria have you ever been treated ?”
Answer: “Charity Hosp. N.O. La. (year) ’43, (illness) partial gastrecto-my.”
“4. Who is your physician? When did you last consult him? (If for check-up, why made?)”
Answer: “None.” 8
“5. Have you had: (answer yes or no. If yes, give details, dates and duration.)
“A. Heart disease, shortness of breath or high blood pressure?”
Answer: “No.”
The answers to the above questions were manifestly false. The record shows that Lane had entered Touro Infirmary for treatment just six weeks before his application for insurance. He entered Touro on February 19, 1960 and remained under treatment there until F -bruary 25, 1960. Among his complaints were shortness of breath for the past six months and coughing which was more severe at nights. The patient underwent a bronchoscopic examination under a local anesthetic. An elec *204 trocardiogram was made and when discharged he was put on digitalis and other drugs. The final diagnosis was “chronic bronchitis; pul-emphysema; ASHD; Mild C.H.F.”
The policy was issued on May 9, 1960. Lane died on September 8, 1960. The cause of death as evidenced by his death certificate was: “Probable acute myocardial infarction. Due to arteriosclerotic heart disease and hypertensive cardiovascular disease,” the latter two conditions being reported as having existed for years.
Plaintiff seems to urge that because Lane told the agent who took his application that he had gone to Touro Infirmary for a “check-up” there was no material misstatement when he failed to disclose to the medical examiner the true facts of his confinement and treatment at that institution. Telling the agent that he had been in Touro Infirmary for only a “check-up” when in fact he had been confined there for treatment was itself a deception, and his failure to disclose any information about his confinement to Touro Infirmary would have been inexcusable even in a layman, and Lane, as a life insurance agent himself, is presumed to have known the reliance placed by life insurance companies on the reports of their medical examiners.
The law is well settled. As was said by this Court in Radosta v. Prudential Insurance Company of America, La.App., 163 So.2d 177:
“ * * * In order to invalidate a life insurance policy on the ground that the insured had made false answers to questions propounded by the examining physician in connection with the application for the policy, it is not necessary for the insurer to prove fraud on the insured’s part. LSA-R.S. 22:619(B). It is now well settled by the jurisprudence of this state that false representations in an application for life insurance will furnish ground for forfeiture of the policy if they relate to matters material to the risk, the test of materiality being whether knowledge of the facts would have influenced the insurer in determining whether to accept the risk or in fixing the amount of premiums. * * *
“It makes no difference whether the insured dies from a condition about which a false statement was made in order for the false representation to be deemed material to the risk. A causal connection between the facts misrepresented and the death of the insured is not necessary to establish the insurer’s right to claim forfeiture of the policy. * * * ”
Plaintiff asserts that a “correct copy” of Lane’s application was not attached to the policy when issued, and therefore the application was inadmissible in evidence under the provisions of LSA-R.S. 22:618(A). Plaintiff is mistaken because a photostatic copy of the application is attached to the policy and was so attached when the policy was issued. What plaintiff evidently refers to is the fact that the report of the physician’s “Medical Examination” is not attached. But everything appearing over Lane’s signature including his answers to the examiner’s questions is attached. The omission of the report of the “Medical Examination” which is signed only by the physician does not in our opinion destroy the admissibility of the photostat as a “correct copy” of Lane’s application.
Lastly, plaintiff argues that the defendant insurer has not shown or at least has not properly shown the materiality of the insured’s misrepresentations. Plaintiff argues that defendant produced only one witness in attempting to prove materiality and since that witness had no connection with the defendant company, he was not competent to testify whether knowledge of the facts would have influenced defendant in determining whether to accept the risk or in fixing the amount of the premiums.
*205 The witness produced by defendant was Dr. Ronald C. Voss who is thoroughly experienced in the underwriting practices of life insurance companies generally. For more than forty years Dr. Voss was closely identified with the Home Office practice and procedure of life insurance companies haying been at various times Assistant Medical Director, Associate Medical Director and ultimately Medical Director of the Pan-American Life Insurance Company of New Orleans. He also had served as chairman of the Medical Section of the American Life Convention, an organization composed of Medical Directors of life insurance companies.
Dr. Voss testified that from his knowledge of the methods prevailing in life insurance companies generally it was his opinion that knowledge of the facts reflected in the Touro Infirmary record would have led to a rejection of Lane’s application or the possible increase in the premium rate. He stressed the importance of knowing the complaint for which the individual went into the hospital as well as the result of the studies which were made there in order to determine how much of the complaints were caused by some condition which impaired the patient’s health. Plaintiff’s counsel did not cross-examine Dr. Voss.
Dr. Voss was a disinterested witness and his testimony as to the practices of companies generally would seem to be preferable to the self-serving testimony of an employee of the defendant company regarding the practices of his own company. See opinion of Judge Taft in Penn Mutual Life Insurance Company v. Mechanics’ Savings Bank & Trust Co., 6 Cir., 72 F. 413, 38 L.R.A. 33. See also Cunningham v. Penn Mutual Life Insurance Company of Philadelphia, Pa., 152 La. 1023, 95 So. 110, 112.
We are of the opinion that the conditions for which the insured was hospitalized and treated at Touro Infirmary were not trivial, and that his false representations with respect thereto furnish ground for the forfeiture of the policy since they related to matters material to the insurer’s risk. See generally Appleman, Insurance Law and Practice, Vol. 1, Sec. 244 et seq. See also Annotation in 131 A.L.R. 617.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by appellant.
Affirmed.