John FELBER, on behalf of himself and all others similarly situated,

v.

Franklin M. FOOTE, Commissioner of the Connecticut State Department of Health.

Civ. No. 13887.

United States District Court, D. Connecticut.

Dec. 21, 1970.

Igor I. Sikorsky, Jr., Hartford, Conn., Donald R. Williams, Jr., Farmington, Conn., for plaintiff.

Robert K. Killian, Atty. Gen., F. Michael Ahern, G. Michael Budlong, Asst. Attys. Gen., Hartford, Conn., for defendant.

Before SMITH, Circuit Judge, BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

Plaintiff, Dr. John Felber, is a licensed practicing physician specializing in psychiatry within this state. By this action he seeks, for himself and all practitioners of the healing arts in Connecticut,[1] declaratory and injunctive relief from the enforcement by the defendant, Franklin M. Foote, State Commissioner of Health, of Conn.Gen.Stats. § 19–48a. This statute compels such practitioners to report the names of, and other information about, "drug-dependent" persons to the Connecticut State Commissioner of Health.[2]

The plaintiff alleges that § 19–48a is unconstitutional in several respects and infringes his rights of personal liberty. A cause of action is alleged to arise under 42 U.S.C. § 1983[3] and jurisdiction to entertain it under 28 U.S.C. § 1343(3). Because the plaintiff seeks a permanent injunction against the enforcement of a state statute on the ground of its unconstitutionality, a three-judge district court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 to hear his claim. The defendant subsequently moved to dismiss the complaint for fail-

1. The action is properly a class action under Fed.R.Civ.P. 23(a) and (b) (2), since the prerequisites of subsection (a) are met and since "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *" See Notes of Advisory Committee on Rules, 28 App.U.S. C. Rule 23, at 1605 (Supp. III 1968); Solman v. Shapiro. 300 F.Supp. 409 (D. Conn.), aff'd, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969).

2. Section 19–48a reads as follows:
"Each practitioner of the healing arts shall report to the commissioner of health the full name, address and date of birth of every person who, in his opinion, is a drug-dependent person dependent upon controlled drugs, as defined in section 19–443. Practitioners making such reports in good faith shall be immune from any civil or criminal liability that otherwise might be incurred from the making of such report. No such report or the information therein shall be admissible in any criminal prosecution or used for other than rehabilitation, statistical or medical purposes and each such report shall be held confidential by the commissioner."

3. 42 U.S.C. § 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

ure to state a claim upon which relief can be granted.[4]

Plaintiff advances two principal contentions: (1) that the Connecticut statute unreasonably invades his right to privacy protected by the federal Constitution; and (2) that the statute violates his right to due process of law guaranteed by the fourteenth amendment to the Constitution.

## I.

### The Right Invaded

Plaintiff, Dr. Felber, alleges that § 19–48a invades both the rights of privacy of practitioners of the healing arts and of their patients.

The plaintiff argues that his right to privacy is invaded because the statute interferes with his private practice of medicine. He states that § 19–48a creates a conflict between the practitioner's professional duty towards his patients to keep their communications confidential and the demands of the statute that he disclose information about them. He contends that the practitioner is placed in the position of an "informer," unless the patient is advised of the statute, in which event the patient may refuse to submit to treatment. The plaintiff also claims that the statute may require licensed physicians to violate unspecified professional standards of conduct or ethics.[5]

While we are not unmindful of the concern expressed by the plaintiff, we decline to accept his formulation of the issue in constitutional terminology. The right which the plaintiff seeks to protect has no roots in the Constitution.

### Privilege of Confidentiality

There is no constitutional foundation for the cloak of confidentiality which gives a patient the privilege to exclude communications by him to his physician in judicial proceedings. The source and development of the physician-patient privilege has been outlined by others and need not be recounted here.[6] It is sufficient to note that "[t]he common law knew no privilege for confidential information imparted to a doctor." McCormick, *supra*, at 211. The common law practice permitted such information to be introduced into evidence. Rhodes v. Metropolitan Life Ins. Co., 172 F.2d 183 (5th Cir.,), cert. denied, 337 U.S. 930, 69 S.Ct. 1495, 93 L.Ed. 1738, (1949). Cf. In re Albert Lindley Lee Memorial Hosp., 115 F.Supp. 643 (N.D. N.Y.), aff'd 209 F.2d 122 (2d Cir. 1953), cert. denied, Cincatta v. United States, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954). The privilege first came into being through a New York statute in 1826[7] as a departure from the common

---

4. The defendant's motion is also based on the grounds that the plaintiff does not present a case or controversy between the parties and that the plaintiff has not exhausted his state administrative remedies. The fact that the plaintiff may not have exhausted his state administrative and judicial remedies does not require dismissal of an action under the Civil Rights Act. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, 392 U.S. 309, 312, 88 S.Ct. 2128, 20 L.Ed. 2d 1118 (1968). See Eisen v. Eastman, 421 F.2d 560, 569 (2d Cir. 1969). Plaintiff's claim that § 19–48a *currently* invades his right to privacy presents a justiciable controversy. The argument that he has not been, and may not ever be, sanctioned for a failure to comply with the statute is considered as one aspect of defendant's motion to dismiss plaintiff's due process claims in part II of this opinion.

5. The Hippocratic oath has been analyzed as no vow of absolute secrecy, but rather as imposing a general obligation on the physician to abstain from gossip. An Abused Privilege, 6 Colum.L.Rev. 388.

6. *See* 8 Wigmore, Evidence §§ 2380, 2380a (McNaughton rev. ed. 1961); Mc-Cormick, Evidence §§ 101–108 (1954); Chafee, Privileged Communications: Is Justice Served or Obstructed by Closing the Doctor's Mouth on the Witness Stand?, 52 Yale L.J 607 (1943),; Model Code of Evidence, rules 220–223 and Comments (1942).

7. The New York statute is included in a compilation of statutes quoted in 8 Wigmore, *supra*, § 2380 at 819, n. 5.

law rule. Whatever protection there is against disclosure of a patient's communications to his physician is afforded solely by the law of the individual states.[8]

Even in those jurisdictions that have adopted a statutory rule against the disclosure of information about a patient which is acquired in the course of treatment by his physician, a required report of such information to a public official, who is in turn forbidden to disclose it, leaves the privilege intact.[9]

### Right to Privacy

Plaintiff further makes the unwarranted assumption that the special nature of the doctor-patient relationship affords him a constitutionally protected right to privacy in his conduct of the relationship. There is no "general constitutional right to privacy." Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). See Travers v. Paton, 261 F.Supp. 110 (D.Conn.1966).

The plaintiff's conception of "privacy" which he seeks to protect bears no analogy to those spheres of privacy which have previously won constitutional protection. Plaintiff does not assert a right akin to the fourth amendment's guarantee against unreasonable searches and seizures. See Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The statute in issue has a built-in fourth amendment protection; it specifically provides that the physician's report shall not be admissible in any criminal prosecution. See footnote 2, supra.

In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the so-called right of privacy granted protection was the right of husband and wife to be let alone in the determination of family planning aspects of their marital relationship. There is not the slightest indication in the Griswold opinion that by its protection of the sanctity of the family, the Court intended to consti-

---

8. Connecticut has never established a general privilege of confidentiality for communications from patients to practitioners of the healing arts. Sherman v. Sherman, 1 Root 486 (Conn.1793) (divorce for adultery, a doctor's testimony compelled, though "all he could testify came to his knowledge in confidence"); Zeiner v. Zeiner, 120 Conn. 161, 167, 179 A. 644, 647 (1935) (divorce for adultery, information given to physicians "has never been privileged"); State v. Reid, 146 Conn. 227, 232, 149 A.2d 698 (1959).

Connecticut's legislature was, however, apparently persuaded that the justifications for such a privilege are sufficiently strong in the special case of persons who consult psychotherapists. Sections 52–146a, c–j of the Connecticut General Statutes create a privilege of confidentiality for the communications and records of mental patients.

This right of confidentiality belongs solely to the patient or his guardian. It may be enforced only by a "person aggrieved by a violation" of the statute through an action in a Connecticut state court. § 52–146j. Thus, as with other privileges, this one may be exercised and enforced only by the beneficiary of the privilege, namely the patient. See Good-

ard v. Garner, 28 Conn. 172 (1859) (only client may assert the attorney-client privilege); State v. Hoyt, 47 Conn. 518, 36 Am.Rep. 89 (1880) (spousal privilege). It "is a purely personal right." Rhodes v. Metropolitan Life Ins. Co., supra, 172 F.2d at 184.

Dr. Felber is not the beneficiary of this statutory privilege, and thus is not "a person aggrieved." The question of possible conflict between this statute and § 19–48a may be raised only by a party who is adversely affected by the conflict. The plaintiff "cannot represent a class of whom [he is] not a part." Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962).

9. The Model Code of Evidence, rule 223 (4), provides:

"There is no privilege under Rule 221 as to information which the physician or the patient is required to report to a public official * * * unless the statute requiring the report * * * specifically provides that the information shall not be disclosed."

Other statutes of Connecticut require physicians to report cases of communicable diseases, including those transmitted sexually. E. g., § 19–89. Such reports would be outside the scope of any privilege of confidentiality.

tutionalize the privacy of other relationships, specifically that of physician and patient.

 In short, the right to privacy asserted by the plaintiff is not supported by the Constitution or any federal law. This section of his complaint sets forth no specific facts to show a deprivation of a right, privilege or immunity under the Constitution or federal law as required by 42 U.S.C. § 1983. Therefore, plaintiff fails to state a claim upon which relief can be granted. *Cf.* Mattheis v. Hoyt, 136 F.Supp. 119, 124–125 (W.D. Mich.1955).

## II.

### Due Process

The plaintiff also alleges that § 19–48a denies him due process of law in that (1) it is devoid of any procedural steps or safeguards by which he can determine the existence or nonexistence of "drug-dependency" in a person; (2) its language is too vague to be susceptible of enforcement; (3) it conflicts with the privilege afforded to psychiatrists and psychologists under Conn.Gen.Stats. §§ 52–146c–j; and (4) it is an unreasonable exercise of police power by the State of Connecticut.

Extended treatment of the merits of these due process claims is not called for.[10] It is apparent from the facts of the case that no interest of the plaintiff, or other practitioners, is even remotely affected by the operation of § 19–48a. The fourteenth amendment requires that no state shall "deprive any person of life, liberty or property without due process of law." Therefore, unless a person is actually deprived, or threatened with deprivation, of some interest of life, liberty or property, the operation of a state statute cannot deny him due process.

 It is not entirely clear from plaintiff's complaint what interest or right of "life, liberty or property" he claims he is being deprived of without due process.[11] Some of his allegations suggest that § 19–48a might have some effect on his property or pecuniary interests, and Dr. Felber testified that he was fearful lest knowledge of a doctor's duty to report would keep prospective patients from his door or cause them to withdraw from treatment when informed of that statutory obligation. We do not regard this suggestion as proof to support a contention that his practice has been substantially or even minimally impaired, or that his pecuniary interests will suffer because of the operation of the statute.[12]

10. The contentions (1) and (2) hardly merit a response in view of the specific statutory definitions in § 19–443 of (9) "Drug dependence" and (10) "Drug-dependent person."

11. These terms have not been construed narrowly. "Liberty under law extends to the full range of conduct which the individual is free to pursue * * *." Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). "The 'liberty' mentioned in [the fourteenth amendment] means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free. to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned." Allgeyer v. Louisiana, 165 U.S. 578, 589, 17 S.Ct. 427, 431, 41 L.Ed. 832 (1897). *Accord,* Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Madera v. Board of Educ., 386 F.2d 778 (2d Cir. 1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968). Plaintiff Felber's claims might fall within this broad language were he in any way restrained by the operation of state law.

12. If Dr. Felber's claim rested solely on injury to his pecuniary interests, it is highly doubtful whether this court would

■■■ Dr. Felber's "life and liberty" are not invaded or restrained, or even threatened with risk of restraint, through enforcement of the statute because § 19–48a in fact incorporates no sanctions.[13] It would be sheer speculation on the part of this court, or of plaintiff, to conjure up sanctions for failure to report. Until some specific deprivation of "life, liberty or property" is threatened by the operation of this statute, plaintiff's due process claims are frivolous.

During the hearing, the defendant requested that his motion to dismiss be considered a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b). Since there is no genuine issue as to any material fact presented either by the testimony or the exhibits offered to this court, defendant's motion may properly be considered as one for summary judgment.

We conclude that the statute invades no constitutional right or interest of the plaintiff or other practitioners, and therefore hold it constitutional. This memorandum of decision constitutes the court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a). Accordingly, defendant's motion for summary judgment is granted.

have jurisdiction under 28 U.S.C. § 1343 (3) to entertain his suit. That statute has been interpreted to grant jurisdiction only to claims alleging deprivations of a right of personal liberty, "not dependent for its existence upon the infringement of property rights." Hague v. CIO, 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939) (opinion of Mr. Justice Stone).; Eisen v. Eastman, *supra,* 421 F.2d at 566.

13. The statute, in force in Connecticut since 1965, provides for no enforcement proceedings. There is no record of any such proceedings, or sanctions having been imposed for violation of its provisions. Dr. Felber, and presumably other practitioners of the healing arts, received a letter from the defendant in January of 1970, reminding them of their obligation under § 19–48a. In that letter it was stated that "enforcement * * * against any practitioner who fails to make such report will be in the hands of the Office of the Attorney General." No representation was made as to which form "enforcement" would or could take, since in Connecticut the Attorney General has no jurisdiction over criminal matters, Conn.Gen.Stats. § 3–125, and there is no indication that his office would initiate suspension, revocation or annulment of a physician's license. Conn. Gen.Stats. § 20–45. *Cf.* Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).